UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Stackhouse, | Civil Action No. 4:15-cv-03690-BHH-KDW |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Dillon County Sheriff's Department and Dillon County, | |
| Defendants. | |

Plaintiff filed this 42 U.S.C. § 1983 action alleging that Defendants violated his Fourth and Fourteenth Amendment rights during the course of his arrest and subsequent imprisonment. Plaintiff also brings South Carolina state law claims against Defendants for false imprisonment, malicious prosecution, and gross negligence. This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 30, filed on September 12, 2016. On September 29, 2016, Plaintiff filed a Response in Opposition to Defendants' Motion, ECF No. 33, and Defendants filed a Reply on October 7, 2016, ECF No. 34. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review. The undersigned recommends granting Defendants' Motion for Summary Judgment, ECF No. 30.

I.  Background

In 2005, two individuals were shot at a night club in Dillon, South Carolina. In his Complaint, Plaintiff alleges he was arrested on September 25, 2005, and charged with multiple counts in connection with these shootings including: assault and battery with intent to kill

(ABWIK), accessory to murder, pointing and presenting a firearm, malicious injury to property or person, and assault and battery of a high and aggravated nature ("ABHAN"). ECF No. 1-1 ¶ 7.[1] Plaintiff represents that the Fourth Judicial Circuit Solicitor for South Carolina dismissed all charges against him on April 24, 2013, and April 25, 2013. *Id.* ¶ 8. Plaintiff maintains that Defendants caused him to be incarcerated at the Dillon County Detention Center for approximately 21 days before he was released on bond. *Id.* ¶ 10. Based on the charges against him, Plaintiff alleges he was forced to obtain legal counsel and vigorously fight the charges for nearly eight years. *Id.* ¶ 11. Plaintiff represents that he "is informed and believes that the Defendant[s] by and through the conduct of its agents employees, and representative, failed to conduct an investigation or proper investigation in the events which le[d] to Plaintiff being arrested and charge[d] with [] criminal offenses." *Id.* ¶ 12. Further, Plaintiff represents that he believes he was arrested so that Defendants could force him to act as a cooperating witness/confidential informant against other persons who Defendants were investigating and prosecuting. *Id.* ¶ 13.

In his first cause of action, Plaintiff brings a cause of action for false imprisonment. *Id.* ¶¶ 14-18. Specifically, Plaintiff alleges that Defendants, by and through their employees, agents, and representatives, intentionally and deliberately arrested and detained him against his will. *Id.* ¶¶ 15-16. Further, Plaintiff alleges these Defendants, by and through their employees, agents, and representatives, unlawfully arrested and detained Plaintiff for the above-mentioned criminal offenses. *Id.* ¶ 17.

---

[1] Initially, Plaintiff filed his Complaint in the Dillon County Court of Common Pleas on April 24, 2015. ECF No. 1-1 at 4-11. Defendants removed the case to this court on or about September 16, 2015. ECF No. 1.

Plaintiff brings a second cause of action for malicious prosecution. *Id.* ¶¶ 19-24. There, Plaintiff alleges that Defendants by and through their employees, agents, and representatives, caused the institution and continuation of the criminal prosecution of the Plaintiff. *Id.* ¶ 20. Further, Plaintiff maintains that Defendants, by and through their employees, agents, and representatives, insisted on the filing of the criminal charges against Plaintiff, and that all criminal charges against him were "terminated in Plaintiff's favor on April 24, 2013 and April 25, 2013." *Id.* ¶¶ 21, 22. Plaintiff contends that Defendants, by and through their employees, agents, and representatives, maliciously instituted charges against Plaintiff without probable cause. *Id.* ¶¶ 23, 23.[2]

Plaintiff brings a third cause of action for gross negligence. *Id.* ¶¶ 25-29. There, Plaintiff alleges that Defendants were grossly negligent, reckless, willful and wanton in one or more of the following particulars:

> a. In failing to proper[l]y investigate or properly (sic) each and every event that led to the arrest and charge of the Plaintiff for the criminal offenses identified in paragraph 7 of this Complaint;
> b. In failing to refra[in] from causing the arrest and charge[s] of the Plaintiff for each of the criminal offenses identified in paragraph 7 of this Complaint;
> c. In failing to obtain[] probable cause evidence in connection with each and every criminal offense identified in paragraph 7 of this Complaint prior to seeking warrants for the Plaintiff's arrest for such criminal offenses;
> d. In failing to properly supervise their employees, agents, and representatives who failed to investigate each criminal offense identified in paragraph 7 of this Complaint and for failing to obtain probable cause for each criminal offense identified in paragraph 7 of this Complaint before causing Plaintiff's arrest for such criminal offenses;
> e. In failing to train or properly train their employees, agents, and representatives who were responsible for investigating the criminal actions identified in paragraph 7 of this Complaint;
> f. In causing the arrest and prosecution of the Plaintiff for the criminal offenses identified in paragraph 7 of this Complaint;

---

[2] The undersigned notes that two paragraphs in Plaintiff's Complaint are labeled as paragraph "23." *See* ECF No. 1-1 at 8.

> g. In failing to caus[e] the release from incarceration or the termination of the prosecution of Plaintiff for the criminal offenses identified in paragraph 7 of this Complaint when Defendants, by and through their employees, agents, and representatives, knew or should have known that the Plaintiff was not criminal[ly] responsible for the offense[s] identified in paragraph 7 of this Complaint.

*Id.* ¶ 26. Plaintiff alleges that Defendants, by and through the conduct of their employees, agents, and representatives breached certain duties owed to him which caused him to suffer damages. As a result of all three causes of action, Plaintiff alleges he suffered the following damages to wit:

> a. loss of his liberty and for freedom;
> b. physical injury in and about his body;
> c. emotional distress and mental anguish;
> d. loss wages; and
> e. loss of enjoyment of life.

*Id.* ¶¶ 18; 24; 27-29.

In his fourth and final cause of action, Plaintiff brings suit pursuant to 42 U.S.C. § 1983 and alleges that "Defendants, by and through the conduct of their employees, agents, and representatives, cause[d] the Plaintiff to be unlawfully and unjustifiably deprived of his constitutional right to [] life, liberty, and due process under the Fourth and Fourteenth Amendments to the United States Constitution." *Id.* ¶¶ 30-31. Further, Plaintiff alleges that "Defendants, by and through the conduct of their employees, agents, and representatives caused the Plaintiff to be deprive[d] of constitutional rights identified in paragraph 31 due to customs, practices, and polic[i]es they have adopted and exercise." *Id.* ¶ 32.

For each cause of action, Plaintiff seeks $600,000.00 in compensatory and consequential damages against Defendants, joint and severally. *See id.* ¶ 35. Additionally, Plaintiff seeks attorneys' fees, costs, and all other relief available to Plaintiff or deemed appropriate by the Court. *Id.*

II. Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III. Analysis

    A. Dillon County as Improper Party[3]

---

[3] In their first argument, Defendants maintain that Defendant Dillon County Sheriff's *Department* is not a proper party and must be dismissed pursuant to Rules 12(b)(2), (4), and (5), FRCP. ECF No. 30-1 at 8. Essentially, Defendants argue that the proper party, Dillon County Sheriff's *Office*, was incorrectly identified, and thus, Plaintiff failed to effectuate service of process in accordance with Rule 12(b)(5). *Id.* However, the undersigned finds that Dillon County Sheriff's Office effectively had notice of the pending action and actively defended the suit. *See Abunaw v. Prince George's Corr. Dep't*, No. Civ.-DKC 13-2746, 2014 WL 3697967, at *2 (D.

Defendants argue that Dillon County is not a proper party to this action because "Dillon County has no statutory authority or responsibility to supervise or control deputies or officers of the Dillon County Sheriff's Office." ECF No. 30-1 at 8-9. Further, Defendants maintain that "Dillon County cannot be held liable for the alleged actions of representatives of the Sheriff's Office or Solicitor's Office." *Id.* at 9. In response, Plaintiff agrees with Defendant's assertion that "Dillon County has no statutory authority or responsibility to supervise or control deputies or officers of the DCSD. . . ." ECF No. 33 at 6. However, Plaintiff argues that his Complaint "is not limited to Defendant DCSD and its employees [but] contemplates the conduct of the Dillon County magistrate judges that cause the warrants requested by DCSD that result in Plaintiff's arrest and incarceration." *Id.* Specifically, Plaintiff argues Dillon County is "responsible for the conduct of the county magistrate judges that issued with gross negligence the warrants that cause Plaintiff's arrest [and subsequent incarceration]." *Id.* at 7. In their Reply, Defendants argue that "Plaintiff's Complaint does not allege facts that suggest even the possibility of wrongdoing by Dillon County through its magistrates." ECF No. 34 at 2.

On the outside, the undersigned agrees with both parties' position that Dillon County cannot be liable for the conduct of Dillon County Sheriff's Department or Dillon County Sheriff's Department employees as a matter of law or based on vicarious liability. Essentially,

---

Md. July 23, 2014) (internal citation omitted) ("Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court."). Furthermore, the undersigned likely would have allowed Plaintiff an opportunity to amend his Complaint and name the proper entity had Defendants filed a Motion to Dismiss prior to filing a Motion for Summary Judgment. Therefore, the undersigned finds Plaintiff properly effectuated service on Defendant Dillon County Sheriff's Department, or Dillon County Sheriff's Office, with notice of this action so that this court has personal and subject matter jurisdiction. Therefore, the undersigned declines to recommend dismissal on that basis.

Dillon County Sheriff's Department employees are state rather than county employees. Article V, section 24 of the South Carolina Constitution provides:

> There shall be elected in each county by the electors thereof a clerk of the circuit court, a sheriff, and a coroner; and in each judicial circuit a solicitor shall be elected by the electors thereof. All of these officers shall serve for terms of four years and until their successors are elected and qualify. The General Assembly shall provide by law for their duties and compensation.
>
> The General Assembly also may provide by law for the age and qualifications of sheriffs and coroners, and the selection, duties, and compensation of other appropriate officials to enforce the criminal laws of the State, to prosecute persons under these laws, and to carry on the administrative functions of the courts of the State.
>
> The Attorney General shall be the chief prosecuting officer of the State with authority to supervise the prosecution of all criminal cases in courts of record.

This section of the South Carolina Constitution makes it clear that county sheriffs and county sheriff's departments are state and not county officers or offices. Simply put, the Constitution allows each county to elect a sheriff who then serves a four-year term and is paid by the South Carolina General Assembly rather than the county for which he or she serves. South Carolina courts have also held or noted that the state's governing body rather than county officials control a County Sheriff and a County Sheriff's Department. *See Wyatt v. Fowler*, 484 S.E.2d 590, 593 (S.C. 1997) ("[D]eputies and sheriffs are state officials and therefore not liable in their official capacity under § 1983."); *Cone v. Nettles*, 417 S.E.2d 523, 524-25 (S.C. 1992) (citing and relying on reasoning in *Gulledge v. Smart,* 691 F. Supp. 947 (D.C.S.C. 1988), *aff'd* 878 F.2d 379 (4th Cir. 1989), to hold sheriffs and deputies are state, not county, officials); *Hucks v. Cty. of Union*, No. 2006-UP-323, 2006 WL 7286762, at *1 (S.C. Ct. App. Sept. 6, 2006) (internal citations omitted) ("The law is clear that sheriffs and deputy sheriffs are not employees of their respective counties. Sheriffs are constitutional officer[s] in South Carolina. The state, rather than the respective counties, has the potential power of control over sheriffs. The sheriff of

each county is an elected office established by our state constitution. The supreme court has long held that deputy sheriffs are not employees of the county."); *see also Cromer v. Brown,* 88 F.3d 1315, 1318 (4th Cir. 1996) (finding South Carolina sheriffs are arms of the state and entitled to Eleventh Amendment immunity from claims for damages in their official capacity); *McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) ("[A] deputy sheriff is considered an arm of the State. . . ."); *Watterson v. Fowler*, No. C.A. 9:06-1064-PMD-GC, 2006 WL 1663801, at *4 (D.S.C. June 8, 2006), *report and recommendation adopted*, No. 9:06-1064-PMD-GCK, 2006 WL 1687431 (D.S.C. Apr. 12, 2006) ("[I]n South Carolina, a county Sheriff and the Sheriff's Department are entitled to Eleventh Amendment protection.").

Therefore, neither Dillon County Sheriff's Department nor the sheriff or sheriff's deputies are employees of Dillon County. Thus, there is no legal or vicarious liability basis on which Dillon County may be a party to this lawsuit based on the conduct of the Sheriff's Department or its employees. However, Plaintiff may have alleged sufficient facts upon which to state an independent claim again Dillon County in his Complaint. An examination of the specific factual allegations in the Complaint is therefore necessary to make this determination.

In Response to the Motion, Plaintiff directs the court to paragraphs seven, nine, and ten of the Complaint. *See* ECF No. 33 at 6 "(See Complaint, paras, 7, 9, 7 & 10)."[4] Under the Pertinent Facts section of his Complaint, Plaintiff maintains:

> 7. The Plaintiff was arrested and charged with Assault With Intent to Kill on or about September 25, 2005; in which the warrant read, "THAT THE DEFENDANT DID IN DILLON COUNTY ON OR ABOUT 9/25/2005 COMMIT AN ASSAULT AND BATTERY UPON ON DAVID LAFTON KELLY BY SHOOTING VICTIM IN RIGHT SIDE AREA WITH INTENT TO KILL SAID VICTIM", Accessory Before the Fact to a Felony on or about December 14, 2006, in which the warrant read, "THAT THE DEFENDANT DID,

---

[4] The undersigned notes Plaintiff's scrivener's error in citing to paragraph seven (7) twice and has reviewed the entire Complaint to find support for his *Monell* claim.

> IN DILLON COUNTY ON OR ABOUT 09/04/2005 A ACCESSORY TO MURDER OF ONE QUENTIN COVINGTON WHOM DIED AS A RESULT OF GUN SHOT WOUND THIS IS IN VIOLAITON SECTION 16-1-40; Pointing and Presenting a Firearm at a Person on or about December 16, 2006; Malicious Injury to Property or Person on or about October 11, 2005, in which the warrant read, "THAT THE DEFENDANT DID IN DILLON COUNTY ON OR ABOUT 9/25/2005 DO DAMAGE TO REAL PROPERTY, TO WIT 2003 HONDA SANATA WITH ESTIMATED DAMAGE IN THE AMOUNT OVER $1000"; and Assault and Battery of a High and Aggravated Nature on or about October 11. 2005, in which the warrant read, "THAT THE ABOVE NAMED DEFENDANT DID ON 9/25/2005 WITH MALICE AFORETHOUGHT COMMIT AN ASSAULT AND BATTERY OF HIGH & AGGRAVATED NATURE UPON ONE NICHOLAS KELLY THIS HAPPENED AT CLUB ALEXIS, DILLON, SC IN DILLON COUNTY."
>
> 9. Although Plaintiff proclaimed innocence of all charges identified through prosecutorial periods, he never learned that the Defendant had no probable cause upon which to arrest and charge him of any of the charges identified in paragraph 7 of this Complaint until after his charges were dismissed by the office of the Fourth Judicial Circuit Solicitor.
>
> 10. That Defendants, by and through its employees and agents, caused the Plaintiff to be incarcerated at the Dillon County Detention Center for approximately 21 days before he was released on bond, due to his arrest for the charges identified in paragraph 7 of this Complaint.

*See* ECF No. 1-1 at 4-5. Here, Plaintiff argues that his Complaint contains enough allegations against Dillon County to amount to a *Monell* claim.[5] However, the undersigned is not convinced that the Complaint meets Rule 8 pleading requirements for a *Monell* claim because, as Defendants argue, the word "magistrate" is not mentioned at all in Plaintiff's Complaint.

Rule 8 of the Federal Rules of Civil Procedure requires that complaints shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Further, the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[5] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

of action will not do. . . ." *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly* Court noted that defendants will not know how to respond to conclusory allegations, especially when "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly,* 550 U.S. at 565 n. 10. However, *Twombly* did not expressly hold that a plaintiff must assert specific time, place, and persons involved in order to comply with Rule 8. *See Ashcroft,* 556 U.S. at 678 (internal *Twombly* citation omitted) ("As the Court held in *Twombly,* [ ] the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 325 (2d Cir. 2010) (finding the *Twombly* court noted, in dicta, that the pleadings there mentioned no specific time, place, or person involved in the alleged conspiracies and rejected defendants' argument that *Twombly* requires a plaintiff identify the specific time, place, or person related to each conspiracy allegation); *Milliken & Co. v. CNA Holdings, Inc.,* 3:08–CV–578–RV, 2011 WL 3444013, at *5 (W.D.N.C. Aug. 8, 2011) (finding other courts have held a plaintiff can survive a motion to dismiss even though he fails to answer who, what, when and where).

The undersigned finds that Plaintiff failed to allege enough facts so that Defendant Dillon County could defend against claims of wrongdoing by any of its magistrates. Moreover, in paragraph three of Complaint, Plaintiff specifically maintains: "The Sheriff's Department is, and was at all times relevant to this action, a political subdivision of the County, with its principal place of business in the County of Dillon, State of South Carolina, and organized and existing

under the laws of the State of South Carolina." ECF No. 1-1 ¶ 3. Therefore, one would logically believe that Plaintiff named Dillon County as a party based on his mistaken belief that Dillon County Sheriff's Department is a "political subdivision of [Dillon] County." Additionally, as Defendants argue, the term "magistrate" is wholly absent from the Complaint. Accordingly, the undersigned finds that Defendant Dillon County was not put on notice of any alleged wrongdoing by any of its magistrates as required by Rule 8.

Here, the crux of Plaintiff's Complaint focuses on allegations of an improper or inadequate investigation that led to his arrest, incarceration, and prolonged prosecution. *See id.* at ¶¶ 12-13.[6] Additionally, the facts contain Plaintiff's belief that "Defendants caused his arrest and incarceration for the purpose of forcing him to become a cooperating witness against other persons who the Defendants were investigating and prosecuting; and to coerce the Plaintiff to serve the Defendants in the capacity as a confidential informant." *See id.* ¶ 13. Essentially, Plaintiff fails to make allegations specifically concerning the manner in which the warrants for his arrests were procured or the wrongdoing of the issuing magistrates. Though Plaintiff now argues Dillon County is responsible for the alleged "gross negligence" of the county magistrate that issued the warrant for his arrest, this specific claim is not alleged in his Complaint. ECF No. 33 at 7.[7]

---

[6] The undersigned notes Plaintiff's Complaint contains two paragraphs labeled as "13" and has reviewed all allegations and paragraphs in the Complaint.

[7] Notably, judicial immunity extends to magistrates in these circumstances. *See King v. Myers*, 973 F.2d 354 (4th Cir. 1992) (where the Fourth Circuit Court of Appeals held magistrate was entitled to absolute immunity from civil rights liability for directing officer to effect warrantless arrest). In limited instances, court have assessed whether counties can be liable for the alleged negligence of its magistrates based on the counties' policies. *See e.g., Davison v. Frey*, 837 F. Supp. 235, 241 (E.D. Mich. 1993) (where a Michigan district court assessed whether Monroe County could be liable under section 1983 based on plaintiff's ability to show that the alleged injuries were inflicted pursuant to a governmental custom, policy, or practice and holding that "a

Therefore, the undersigned finds Plaintiff has failed to meet Rule 8 pleading requirements that would give a factual, rather than a legal basis, for including Dillon County as a party to this action. Nevertheless, and in liberally construing the allegations in the Complaint and out of an abundance of caution, the undersigned will address whether a *Monell* claim can survive summary judgment against both Defendants in the following section. At this point in the R&R, the undersigned recommends granting Defendants' Motion for Summary Judgment to the extent Defendants seek dismissal of Defendant Dillon County based on its inability under South Carolina law to supervise or control Defendant Dillon County Sheriff's Office, agents, or employees under a theory of vicarious liability.

B.  Defendants as Improper Parties

In their Motion for Summary Judgment, Defendants maintain they are not persons subject to liability pursuant to 42 U.S.C.A. § 1983. ECF No. 30-1 at 9. Defendants contend that under *Monell* governmental entities may only be liable in a § 1983 action "when execution of a governmental policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 10. Here, Defendants argue "Plaintiff has not established or even attempted to establish that his civil rights were violated during the execution of any policy or custom of Dillon County or the Dillon County Sheriff's Office." *Id.* In response, Plaintiff cites to *Monell* and argues that Defendants are subject to § 1983 liability in this instance because "the arrest warrants that result in the arrest and charge of Plaintiff contained no evidence of DCSD investigation" which is a violation of section 16-25-

---

single incident of unconstitutional activity does not establish an official policy or practice of a municipality sufficient to render the municipality liable for damages under section 1983"); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.").

70(A) of the South Carolina Code. ECF No. 33 at 7-8. Further, Plaintiff represents there is no evidence indicating that the results of an investigation were presented to the magistrate, and the affidavit attached to the warrant "contained only conclusory statements that the Plaintiff has committed the criminal offenses alleged." *Id.* at 8. Moreover, Plaintiff argues that his constitutional rights were violated because a probable cause determination was never made prior to the magistrate issuing the arrest warrant. *Id.*

The Supreme Court case of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), held that municipalities can be liable only for their own illegal acts. Specifically, "§ 1983 liability may attach to a municipality for the misconduct of its police force." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002). Pursuant to *Monell*, municipal liability can result "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694.

The Fourth Circuit case of *Spell v. McDaniel*, explains the principles set out in the *Monell* decision and differentiates between a cause of action for deficient training and as compared to deficient policies. 824 F.2d 1380 (1987). In *Spell*, the Fourth Circuit explains that the "policy" at issue in a *Monell* claim can be a municipal ordinance, regulation, or formal or informal policies that authorize constitutional violations. *Id.* at 1385-86. The court described "custom or usage" as "persistent and widespread . . . practices of state officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Id.* at 1386 (citing *Monell*, 436 U.S. at 691). Furthermore, the court explained that a municipality is liable for a constitutional violation when the policy or custom is "(1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation." *Id.* at

1386-87. The court also explained that custom and usage "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Id.* at 1387. Finally, there must be proximate cause or an "affirmative link" between the policy and the constitutional violation. *Id.* The *Spell* court found: "Neither the existence of such a policy or custom nor the necessary casual connection can be established by proof alone of the single violation charged." *Id.*

      The theories of municipal liability also can arise in the context of police training and supervision. *Id.* at 1389 ("The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example."). The *Spell* decision explained municipal liability in the context of deficient training. *Id.* There, the court held: "The way in which a municipal police force is trained, including the design and implementation of training programs and the follow-up supervision of trainees, is necessarily a matter of 'policy' within the meaning of *Monell*." *Id.* Additionally, the court found that: "[t]o the extent such an official municipal policy has deficiencies resulting from municipal fault that then cause specific constitutional violations by deficiently trained police officers, the municipality is liable under 42 U.S.C. § 1983." *Id.* Under this liability theory, the policy maker must have a degree of fault or at least deliberate indifference, while mere negligence is not enough. *Id.* at 1390. Finally, for the municipality to be liable it requires that "the deficiency or deficiencies be such, given the manifest exigencies of

police work, as to make occurrence of the specific violation a reasonable probability rather than a mere possibility." *Id.*

Turning to municipal liability in the supervisory context, the *Spell* court found that police officers "may fall into patterns of unconstitutional conduct in their encounters with suspects, arrestees, persons in custody and others involved in law enforcement situations." *Id.* at 1390. In some instances unconstitutional policy practices may be so widespread that they have the force of law "but only if its continued existence can be laid to the fault of municipal policymakers. . . ." *Id.* "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Id.* at 1391.

> Because the "deficient training policy" and "condoned custom" theories are simply alternative ways of establishing municipal fault, hence potential *Monell* liability, for specific constitutional violations by police officers, they may be asserted as alternative theories in particular litigation. Fed.R.Civ.P. 8(e)(2). If sufficiently supported by proof, they may then be submitted to a jury as alternative bases for liability, and noncumulative liability may be found on the basis of either or both. . . . Closely related is the principle that just as proof of a single violation will not support the inference that the violation resulted from a municipal "policy" of deficient training, so it obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices.

*Id.* The *Spell* court noted that the substantive requirements for establishing municipal liability are purposefully "stringent" so that liability is not imposed for "indirect or inadvertent imposition of forms of vicarious liability." *Id.*

Ultimately, in dealing with a directed verdict issue, the Fourth Circuit held that the oral testimony presented by the plaintiff painted a picture of a "police department whose members were [] positively encouraged by training and deliberate cover-up to engage in uses of excessive force. . ." *Id.* at 1392. Additionally, the court found that the plaintiff relied principally on the

"testimony of seven lay citizens of the City, eight present or former officers of the City police department, an assistant state district attorney, the former legal advisor to the police department and upon internal records of the City police department." *Id.* These witnesses' testimony concerned the "number of observed or directly experienced acts of brutality by city police officers of the type charged to McDaniel. They further testified that in each instance they filed complaints with the police department which resulted in no corrective or punitive action." *Id.* at 1393. Based on the evidence summarized by the court, the jury verdict imposing municipal liability was upheld. *Id.* at 1393-1401.

In this case, the undersigned finds that Plaintiff has failed to meet the stringent substantive requirements for establishing municipal liability. Here, Plaintiff only argues that in this one instance the affidavit portion of his arrest warrant did not contain enough facts to establish probable cause for his arrest. Moreover, Plaintiff fails to present any evidence that either Defendant has a policy or knowledge of a deficient policy which ultimately led to or contributed to his unlawful arrest and subsequent incarceration and prosecution. As such, the evidence, viewed in the light most favorable to Plaintiff, is insufficient to support a finding that the Dillon County Sheriff's Department or Dillon County maintained a custom and usage of a policy or condoned practice that was allegedly unconstitutional. *See Randall*, 302 F.3d at 211 (affirming the district court's grant of summary judgment to the county defendant because no evidence existed that the County Police routinely detained witnesses against their will). Therefore, the undersigned recommends granting these Defendants summary judgment to the extent Plaintiff has sufficiently raised a *Monell* claim in his Complaint.

  C. State Law Claims for False Imprisonment, Malicious Prosecution, and Gross Negligence

In addition to his § 1983 claims, Plaintiff brings separate state-law claims for false imprisonment, malicious prosecution, and gross negligence. ECF No. 1-1 at 6-10. If the court accepts this R&R, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining causes of action are based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Addison v. Chesterfield Cty. Sheriff Dep't*, No. 4:12-CV-02543-RBH, 2013 WL 6799223, at *3 (D.S.C. Dec. 20, 2013) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to § 1983 claim); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (same in Title VII matter).

Here, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice to them being filed in state court, thus ending this action.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 30, be **granted and this case be dismissed**.

IT IS SO RECOMMENDED.

May 19, 2017                                                                              Kaymani D. West
Florence, South Carolina                                                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**